## Case No. 14,815.
UNITED STATES v. CLEMENT et al.
[Crabbe, 499.] 1

District Court, E. D. Pennsylvania. March 27, 1843.

CUSTOMS DUTIES — "AD VALOREM" — VALUE OF PACKAGES—DUTIES VOLUNTARILY PAID WITHOUT PROTEST.

1. The term "ad valorem," used in the various revenue laws of the United States charging a duty on imports, does not always mean the actual value of the article at the place of exportation.

2. The 7th section of the act of 14th July, 1832 [4 Stat. 591], directed that goods should be appraised at their actual value at the time of purchase and place of exportation; the act of 29th

May, 1830 [Id. 409], fixed the duty on molasses at five cents per gallon; the 1st section of the (compromise) act of 2d March, 1833 [Id. 629], directed that in all cases where duties imposed on foreign imports should exceed twenty per cent on the value thereof, one-tenth of such excess should be deducted biennially, &c. Molasses being imported under these acts, the cost of the packages in which it was contained formed a proper item of its value on which to calculate the twenty per cent.

3. But if, in addition to including the value of the packages in that of the molasses, a separate duty had been charged on them, it would have been wrongly imposed.

4. Duties wrongly imposed, if paid by the importer voluntarily and without protest or remonstrance, cannot be recovered from or set-off against the United States.

5. Payment to a public officer, if unaccompanied by remonstrance or protest, which need not be written, is a voluntary payment.

[Cited in Northrup v. Shook, Case No. 10,329.]

This was an action on a custom-house bond, No. 1294, dated 30th June, 1841, conditioned for the payment of $793, on the 30th December, 1841, that sum being part of the duties charged on an invoice of molasses, imported by the defendants [Clement and Newman] from Cuba into Philadelphia. The act of 29th May, 1830 (4 Story's Laws, 2211 [4 Stat. 409]), fixed the duty on molasses at five cents per gallon; the act of 14th July, 1832, section 7 (4 Story's Laws, 2323, 2324 [4 Stat. 591]), directed that goods should be appraised at their true and actual value at the time of purchase and place of exportation; and the (compromise) act of 3d March, 1833, § 1 (4 Story's Laws, 2328 [4 Stat. 629]), enacted, that in all cases where duties imposed on foreign imports should exceed twenty per cent, on the value thereof, one-tenth of such excess should be deducted biennially until the 31st December, 1841, after which day one-half the residue of such excess should be deducted, and that the remainder thereof should be deducted after the 30th June, 1842. On the arrival of the molasses, for part of the duty on which this bond was given, the custom-house officers at Philadelphia, in accordance with their instructions and usual custom, calculated the duty on the number of gallons at five cents per gallon, and also on the gross value, including that of the hogsheads, tierces, &c., in which the molasses was contained, at twenty per cent. ad valorem; they then deducted from the result of the first method of calculation four-tenths of its excess over that of the second method (it then being in the fourth biennial period), and so fixed the amount of duty to be charged, thus:—

| | | |
|---|---|---|
| Duty on 36,031 galls. at 5 cents per gall. | | $1,801 55 |
| Value, including packages, &c. | $6,309 00 | |
| Twenty per cent. thereon | 1,261 80 | |
| Excess at 5 cents per gall. | 539 75 | |
| Deduct four-tenths of this excess | | 215 90 |
| Net duty | | $1,585 65 |

For this amount of $1,585.65 the defendants gave two bonds,—the one on which this suit was brought, and the other, of similar date and condition, for $792.65; they were, however, of opinion, that the value of the molasses should have been appraised exclusive of the packages in which it was contained, and therefore, in order to test the question, allowed the bonds to remain unpaid and suit to be brought thereon. The defendants' method of calculation was as follows:—

| | | |
|---|---|---|
| Duty on 36,031 galls. at 5 cents per gall. | | $1,801 55 |
| Value, excluding packages, &c. | $4,663 82 | |
| Twenty per cent. thereon | 932 76 | |
| Excess at 5 cents per gall. | 868 79 | |
| Deduct four-tenths of this excess.... | | 347 51 |
| | | |
| Net duty | | $1,454 04 |

—Being $131.61 less than by the custom-house calculation.

The invoice contained the following statement of the cost and charges:—

| | | |
|---|---|---|
| Original cost of molasses | | $4,031 1rs. |
| **Charges.** | | |
| Export duties | $ 264 3rs. | |
| Cost of casks | 1,616 5½ | |
| "   "   bbls. | 28 4 | |
| Hire " casks | 37 1 | |
| Cartage, storage, and gauging | 177 2 | 2,123 7½ |
| | | |
| Commissions on $6,155.0½ at 2½ per cent. | | 153 7 |
| | | |
| | | $6,308 7½ |

The defendants claimed to set off against the demand of the United States both one-half of the sum of $131.61, alleged to be an overcharge on this importation,—the present bond being for one-half the gross duties,—and also the sum of $345.22, being an alleged overcharge, under similar circumstances, paid by them on a former importation. A claim for the repayment of these sums had been disallowed by the treasury department.

Mr. Watts. U. S. Dist. Atty.

Though the amount claimed here is but small, the principle involves the restoration of an immense sum,—not only nineteen or twenty thousand dollars heretofore paid by these defendants, but millions to other importers throughout the United States, paid by them voluntarily and without protest. The execution of this bond is not denied, but it is contended on the other side that the defendants are entitled, in the first place, to a credit of $65.80½, one-half the difference between the two methods of calculating the duties on this importation, and, secondly, to one of $345.22, arising, in a similar manner, on a previous importation, and then paid by these defendants. To oppose these credits we rely on the compromise act of 1833, and especially on its fifth section, which shows that since the passage of that act the policy of government has been to abolish

specific duties and adopt the ad valorem system, which we shall see embraces all charges in the estimate of value. We also rely on the acts of 29th May, 1830, imposing a specific duty of five cents per gallon on molasses, and of 14th July, 1832, section 15, prescribing the method of assessing duties on goods under the ad valorem system, and requiring that all charges but insurance shall be included in the estimate of value. The ninth section of this last act authorizes the secretary of the treasury to establish regulations to carry out the law, and thereunder the treasury circular of 20th April, 1833 (Book of Treasury Circulars, 71), directs that, as to articles subject to specific duties, the comparative ad valorem rate, under the act of 1833, is to be calculated according to the system of the law of 1832, and other laws imposing ad valorem duties. It is conceded by the defendants that where the duties are ad valorem, all charges are included in the appraisement, but they contend that in estimating the comparative ad valorem rate as to articles subject to specific duties, it is merely on the value of the article itself; this we deny, and insist that an ad valorem rate can mean but one thing, and be calculated in but one way. The defendants, in their sworn invoice, have themselves assented to the system adopted in this case, by giving us there the cost of the hogsheads as part of the charges in Cuba. Those charges being shown by the invoice, the only method of calculating the duties by the laws just cited, and by the treasury instructions under them, is to ascertain, first, the specific duties, next, what they would be at twenty per cent. ad valorem, including all charges except insurance, and then, if there is any excess in the former over the latter, to deduct four-tenths of that excess (being then in the fourth biennial period) from the whole amount of the specific duty, and charge the remainder thereof as the proper rate. This disposes of the first credit claimed.

To the second credit defendants ask for, we reply, first, that it is covered by the same objections as the other, and, second, that the duties on which it is founded were paid voluntarily and cannot be recovered by the defendants, they having given no proof of compulsion or protest. Act March 3, 1839, § 21 (9 Bior. & D. Laws, 1012 [5 Stat. 348]); Mowatt v. Wright, 1 Wend. 355; Clark v. Dutcher, 9 Cow. 674; Lowry v. Bourdieu, Doug. 470; Ripley v. Gelston, 9 Johns. 201; Greenway v. Hurd, 4 Term R. 553; Whitbread v. Brooksbank, Cowp. 69; Brisbane v. Dacres, 5 Taunt. 144; Bank of U. S. v. Bank of Washington, 6 Pet. [31 U. S.] 8.

Mr. Cadwalader, for defendants.

Our defence in this case is founded on a belief that there has been an overcharge of duties on this importation, amounting to $131.61, which has arisen from a mistake in the method of calculating the comparative

ad valorem rate, and therefore, while we admit the execution of the bond, we claim to set off against it both the sum of $65.80½, one-half that overcharge, and also one of $345.22, heretofore paid by these defendants under similar circumstances. The methods of imposing duties on imports are two: ad valorem and specific. Under neither system has it been the policy to charge a duty on the packages containing the article imported—indeed, in some instances, it has been the policy to encourage certain descriptions of packages—and under the specific system the duty is expressly charged on the goods themselves. Under the ad valorem system, however, it was enacted that all charges but that of insurance were to be included in the estimate of value: this soon gave rise to great dissatisfaction, which was finally settled by the adoption of the compromise act of 1833, by which duties were gradually reduced to a horizontal scale of twenty per cent. on their home value, and this reduction is to be accomplished by comparing the specific rate with one of twenty per cent. on the value, and regulating the former by the latter. The question here simply is whether, in calculating the rate on the value in order to ascertain the amount of specific duty to be charged, we are to include the cost of packages, although it is admitted that they are not chargeable with specific duties. The process at the custom-house is to calculate the specific duty on the article itself, and an ad valorem duty on the article and the packages containing it; thus, while the law of 1833 directs a reduction of four-tenths when the duties exceed twenty per cent. on the value of the article, the officers manage to add to the duty four-tenths of twenty per cent. on the value of the package. The law says that the specific duty shall bear a certain proportion to twenty per cent. on the value of the article, but the custom-house construes this to mean, not the real value of the article, but a fictitious value, assigned to it according to a peculiar system, adopted where the duties are not specific but ad valorem. In this case they gain for the United States thereby, four-tenths of twenty per cent. on nearly $1,700 more than the real value of the molasses.

It is admitted by the district attorney that the packages themselves are not dutiable. But he also says that, since the act of 1833, the policy of the government has been to bring the duties to an ad valorem standard. That is true and not true. The policy, since then, certainly was to come to a duty on the value, and in facilitating and regulating that process to have a constant reference to the value of the article, but not to the foreign value. The law of 1833 has reference to the real value of the article, "the value thereof" is its expression; but the term "ad valorem" has a peculiar meaning attached to it by the revenue laws. It means something more than the intrinsic value of the article: it is

that value with an addition. The officers of the custom-house, however, construe value and ad valorem as the same thing, thereby indirectly defeating the intent of the law, and preventing the specific duty from bearing the prescribed proportion to twenty per cent. on the value of the article. The act of 1832 itself, which the district attorney relies upon to support the custom-house method of calculation, plainly recognizes this difference of meaning. In the second section, it speaks of the value of wool under which it shall be free of duty, and in the fifteenth section, directs various charges to be added to the value to appraise the ad valorem rate. This distinction may also be seen in the eighth and ninth sections of the act of 19th May, 1828 (4 Story's Laws, 2116–2118 [4 Stat. 273]). It seems clear therefore that the twenty per cent. of the act of 1833, cannot be ad valorem, but on the value—the intrinsic value—of the article.

We are not to be governed in our construction of the laws by the directions of treasury circulars. The act of 1832 certainly allows the secretary of the treasury to make regulations for carrying the laws into effect, but it requires that it must be "not inconsistent with law;" and such has been the decision of our courts. Karthaus v. Frick [Case No. 7,615], in the circuit court of the United States for the Maryland district; Elliott v. Swartwout. 10 Pet. [35 U. S.] 137. Both our claims for credit or set-off rest on these reasons, but the second is met by the additional objection that it was a voluntary payment without protest, and is, therefore, not recoverable against the United States. We reply that there is evidence of a protest to go to the jury, and that it was not a voluntary payment. It was required as a preliminary to entry, and was exacted colore officii, and is therefore not voluntary, and may be admitted as a set-off. Act March 3, 1797, §§ 3, 4,—1 Story's Laws, 464 [1 Stat. 512]; U. S. v. Wilkins. 6 Wheat. [19 U. S.] 144; U. S. v. Bank of Metropolis. 15 Pet. [40 U. S.] 377; Elliott v. Swartwout. 10 Pet. [35 U. S.] 137; Morgan v. Palmer. 2 Barn. & C. 729; Ripley v. Gelston. 9 Johns. 209; Clinton v. Strong, 9 Johns. 377.

H. D. Gilpin, for defendants.

This is a simple case of construction of language, by which we are to infer the intention of congress. In cases where two constructions may be given, the United States uniformly and on principle adopt that which will produce the most duty, nor is such a course open to any great blame so long as the decisions of courts are, as they have been, generally adverse to the construction adopted by government. The construction of the various laws affecting this importation which the custom-house has adopted produces a duty to the United States of $1,585.65, and that which the defendants think right gives them but $1,454.04, being

a difference of $131.61, a small sum in itself, but involving. as the district attorney has truly said. the propriety of the payment of immense ones. Between these two constructions it is now to be decided.

The whole question is as to the propriety of charging duty on the packages containing the molasses, the value of which was $1,645.-18; or, in other words, whether that sum is to be added to the value of the molasses. Under the laws regulating duties on this importation, they were to be charged at the rate of five cents per gallon thereon, provided that charge did not make the duty amount to more than twenty per cent. on the value of the article imported, and if it did exceed twenty per cent. on "the value thereof" then four-tenths of that excess was to be deducted. But the article imported was the molasses, not the package which contained it, and therefore the value meant must have been that of the molasses alone. This is very apparent from the words of the act of 1833 itself, and also from its well-known intention to prevent complicated calculations, to. fix a horizontal standard, and to reduce the duties. How far the duties would be reduced under the system of calculation adopted at the custom-house may be easily seen. Suppose an importation of flour: 196 lbs. at a half cent per lb. would be 98 cents per barrel; the value of the flour is $4.50 and of the barrel $1.50, in all $6.00; but twenty per cent. on $6.00 is $1.20,—an increase of duty, not a reduction; while, on our system of calculation, the specific duty being 98 cents, twenty per cent. on $4.50, the real value of the article, is 90 cents,—a reduction of 8 cents per barrel. The distinction between "value" and "ad valorem" may be seen from the opposite meanings attached to them in various acts of congress. Acts March 2, 1799 (1 Story's Laws, 626 [1 Stat. 627]); 27th April, 1816 (3 Story's Laws, 1588 [3 Stat. 310]); 20th April, 1818 (3 Story's Laws, 1680 [3 Stat. 433]); 1st March, 1823 (3 Story's Laws, 1884 [3 Stat. 729]); 22d May, 1824 (3 Story's Laws, 1942 [4 Stat. 25]); 19th May, 1828 (4 Story's Laws, 2113 [4 Stat. 270]); 14th July. 1832 (4 Story's Laws, 2317 [4 Stat. 583]). The act of 1832 offers us a strong case to show the error committed by the custom-house in construing the "value" of the article to be the same as that on which duty is assessed "ad valorem." By that act, wool, the value whereof does not exceed eight cents per pound, is free, but when its value is over eight cents per pound, it pays forty per cent. ad valorem; now if 100 lbs. of wool, worth seven and a half cents per pound. are imported in a wrapper costing fifty-six cents, and the value is taken by the custom-house system, this wool must pay forty per cent. duty, though it is really worth only seven and a half cents per pound. and therefore, by the express words of the law is free.

Another objection to which this custom-house calculation is open is, that it really charges a duty of four-tenths of twenty per cent. on the packages. though it is admitted. that they are not dutiable. It does indirectly what is forbidden if directly attempted. That such is its real effect can be easily shown. We have seen that, while the custom-house deducts but $215.90 from the specific duty, as the required four-tenths of its excess over the twenty per cent. on the value of the molasses, the defendants would deduct $347.51. and that by this means the custom-house gives the United States $131.61, in addition to the specific duty, when reduced by four-tenths of its excess over twenty per cent. on the real value. What is this $131.61? It is four-tenths of twenty per cent. on the value of the packages in which the molasses is contained. This is not denied. The custom-house calculation is, therefore. two operations combined in one, and when shown at length, will appear in this form:—

| | |
|---|---:|
| Specific duty. at 5 cents per gall. on 36.031 gals. | $1,801 55 |
| Value of the molasses... $4,663 82 | |
| Twenty per cent. thereon　932 76 | |
| Deduct four-tenths of this 20 per cent. | 347 51 |
| Duty on molasses | $1,454 04 |
| Value of the packages.. $1.645 18 | |
| Twenty per cent. thereon　329 03 | |
| Add four-tenths of this twenty . per cent. | 131 61 |
| Whole duty on molasses and packages | $1,585 65 |

The action of the custom-house officers, therefore, is simply an imposition of duty forbidden by law and decision. Karthaus v. Frick [supra].

For these reasons we claim to set off $65.-80½, one-half the overcharge on this importation.

The second set-off we urge arises from past payments by the defendants of similar overcharges, and amounts to $345.22. The laws of the United States have been very careful to allow any equitable credits. provided they have been presented and disallowed at the treasury as these have been. Act Sept. 24, 1789. § 26 (1 Story's Laws, 62 [1 Stat. 87]); Act March 3. 1797, §§ 3. 4 (1 Story's Laws, 464 [1 Stat. 512]); U. S. v. Wilkins, 6 Wheat. [19 U. S.] 144; U. S. v. Macdaniel, 7 Pet. [32 U. S.] 12, 16; U. S. v. Ripley, Id. 25; U. S. v. Fillebrown, Id. 48; U. S. v. Mann [Case No. 15,716]. If these charges were wrongfully imposed. there must be a right to have them refunded, and this right will found an equitable set-off. It is said, however, that the payment of this amount was voluntary and without protest, and that as it could not be recovered under such circumstances, it cannot be set off. We answer:—That there is evidence for the jury. that the payment was not voluntary, and that there was a verbal protest; a written one being unnecessary. That there was no payment to the United States at all in strictness of law. The charges were illegal, and the officers of government may not receive any payment but such as is according to law; the money, therefore, was

never properly in the treasury. That a payment demanded and made under the instructions of a treasury circular is by compulsion. That an erroneous payment to a public officer is never voluntary, and that, even if this were not law, where there is an evident error, and the question is between original parties, equity will interfere. Dew v. Parsons. 2 Barn. & Ald. 568; Morgan v. Palmer, 2 Barn. & C. 734-738; Ripley v. Gelston, 9 Johns. 209; Astley v. Reynolds, Strange, 915; Hunt v. Rousmanier, 8 Wheat. [21 U. S.] 215. As to Elliott v. Swartwout, it was not a case between parties having a right of mutual set-off, but it was against an agent for wrongly paying over. So of Bank of U. S. v. Bank of Washington. and the case in 9 Cow. 674. The act of 1839 was never intended to apply to set-off; it is a mere regulation of finances. The questions to be decided. then, are simply: what is meant by "the value" of the article imported. and whether the law allows a charge of duty both on that article and on the package containing it.

Mr. Watts, U. S. Dist. Atty.. in reply.

The defendants' take two positions: First that "ad valorem" and "value" have a different meaning, and, second, that because the custom-house officers did not recognise this difference, the defendants were wrongfully obliged to pay excessive duties, which they now ask on equitable grounds to set off against the United States. Under the first position they claim credit for $65.80½, under the second for $345.22. He who claims equity must do equity. As to the second credit, the defendants, if they have been wrongfully charged. have been repaid by the consumers to whom they sold, and if they are now allowed to set off prior payments, will really have been twice paid the amount they set off. They are not out of pocket by their payments heretofore, and have no equitable position before this court, at least so far as regards the claim for $345.22. Other objections also apply to that set-off, which we shall take up hereafter. The other credit, for $65.80½, is based upon an alleged misconstruction of law at the custom-house, and the assertion that "value" and "ad valorem," have different meanings. We think those expressions are identical; government thinks so, according to the treasury circular; people generally think so, according to the common use of the terms; the defendants themselves think so, according to their own invoice. which sets forth all possible charges, except insurance, as part of the value. The intention of the act of 1833, was merely to make a reduction on the excess of duty over twenty per cent.: not a reduction of specific duties; not to bring the duties at once to a low level, but to do so gradually. It is not denied that the reduction applies to duties on foreign imports. and it is fixed by law that the value of foreign imports shall include all charges except insurance. Undoubtedly. before the act of 1833, the value

of packages was not included in that of articles which paid specific duties, but the law of 1833 changed this and prescribed a home valuation, which must include the value of packages, and other charges.

The decision of Chief Justice Taney in Karthaus v. Frick [Case No. 7,615], was under the law of 1832, and decides, as we have said, that under that law no duty was chargeable on the packages containing goods liable to specific duties. The act of 1833, however, imposes duties on the value—ad valorem duties on articles before subject to specifics; it prescribes a new method of calculation founded on both systems, and a sort of mongrel between them. Not being an act for specific duties, the decision in question does not apply to it. The fifth section expressly says, that its object is to reduce duties theretofore specific, to a duty of twenty per cent. ad valorem.

If we are right in this answer to the first set-off. we have also disposed of the other. for both rest on the same argument; but, even should we fail in that, the second set-off is liable to other and graver objections. Beside the want of equity we have before urged. we allege that it was a voluntary payment. The question on that is one purely of fact, and the jury will judge whether there has been any evidence of compulsion or protest worthy of notice.

RANDALL, District Judge (charging jury). This action was brought to recover the amount of a bond dated June 30, 1841, conditioned for the payment of $793 on the 30th of December. 1841, that being a moiety of the duties charged on a shipment of molasses imported by the defendants, in the brig Augusta. from Trinidad, Cuba. and entered at the custom-house on the day of the date of the bond. The execution of the bond is admitted, but it is alleged that the amount of the duties has been improperly assessed, and the sum of $131.61 overcharged on this shipment. By the act of May 29, 1830, it is enacted, that from and after the 30th of September. 1830, the duty on molasses (which by the act of 1828 was ten cents per gallon) should be "five cents for each gallon, and no more." By the act of March 2d, 1833, commonly called the "Compromise Act," it is provided that from and after the 31st December. 1833, in all cases where the duties which had been imposed on foreign imports by the act of 1832. "or by any other act," should exceed twenty per centum on the value thereof. one-tenth part of such excess should be deducted; on the 31st of December, 1835, another tenth; on the 31st December, 1837, another tenth; on the 31st December, 1839, another tenth: and from the 31st December, 1841, one-half the residue of such excess; and from and after the 30th of June, 1842, the residue of such excess.

The controversy in this case arises out of the mode of ascertaining what was the value

of the molasses on which the duty is to be assessed. On the part of the United States it is alleged, that the value is to be ascertained in the same way that the value of articles subject to an ad valorem duty is ascertained; while the defendants contend that such is not the true construction of the act. That the term "ad valorem," as mentioned in the various revenue laws of the United States, charging a duty on imports, does not always mean the actual value of the article at the place of exportation, is evident from an examination of some of the acts. The act of 1818, § 4 (3 Story's Laws, 1680 [3 Stat. 433]), directs that ad valorem rates of duty shall be estimated by adding twenty per cent. to the actual cost thereof, if imported from or beyond the Cape of Good Hope, and ten per cent. on the actual cost if imported from any other place, including all charges, except commission, outside packages, and insurance. The acts of 1823, § 5 (3 Story's Laws, 1884 [3 Stat. 729]), and of 1828 (4 Story's Laws, 2117 [4 Stat. 273]), provide, that to the actual cost or value the same percentage shall be added, and as to the charges only excepts that of insurance. The act of 1832 (section 15) directs that to the actual cost or value, all charges except insurance shall be added, but section 4 abolishes the addition of ten and twenty per cent. The seventh section of the act of 1832, directs that goods shall be appraised at their true or actual value, at the time of purchase and place of exportation, "any invoice or affidavit to the contrary notwithstanding." The third section of the act of 1833, provides that from and after the 30th of June, 1842, the duties required to be paid by law on goods, wares and merchandise, shall be assessed upon the value thereof at the port where the same shall be entered, under such regulations as may be prescribed by law: this section, however, was not in operation when these goods were imported. A letter of instructions from the secretary of the treasury, directing the mode of estimating duties under the law of 1833, has been given in evidence, and relied on by both parties, as supporting their view of the case: but such instructions, although they may be a justification for the officer enforcing them, are not binding on the citizen, unless they contain a correct interpretation of the law.

What, then, under these several acts of congress, was the true and legal duty chargeable on this invoice by the Augusta? It is said by the defendants that in addition to the value of the molasses, the custom-house officers have charged a duty of twenty per cent. on the hogsheads or casks in which it was contained. If they have done so, it was an error.

The various acts of congress imposing duties on the importation of foreign merchandise, have always had reference to the package, vessel or article in which such merchandise is imported, but in no instance have they imposed a separate or distinct duty on such article; thus, for instance, by the act of 1832, a duty of six cents per gallon is imposed on red wines of France imported in casks, while the same wine imported in bottles is subjected to a duty of twenty-two cents per gallon. By the same act a specific duty is imposed on bottles; yet it will not be pretended that the wine imported in bottles shall pay a duty of twenty-two cents per gallon, and the bottles in which it is contained a separate and distinct duty. The distinction is, that wine in bottles is sold with the bottle, and is thus of greater value than wine in casks; the duty is charged on the article in the state or condition in which it is exported.

Have, then, the duties on this invoice been charged on a sum greater than the value of the molasses at the time and place of exportation? The defendants contend that the duties are chargeable only on the first cost of the molasses, and if they could have exported it at that price they are correct, and the charge for the hogsheads should not be added. But was the value of the molasses at the time of exportation no more than when purchased at the plantation? Could it have been exported without the hogsheads or casks? Did not its being placed in these increase its value to the extent of the sum mentioned in the invoice? If so, the duties are correctly charged, as they are to be levied on the value and condition at the time and place of exportation, and not on the original cost of the article in the interior of the country. But if the jury should think that, in addition to the value of the molasses, the custom-house officers have charged a distinct and separate duty on the hogsheads, the defendants will be entitled to a credit on one-half of such excess in this suit, the bond being only for a moiety of the duties on this importation, and no part having as yet been paid.

The defendants also claim an allowance for a similar charge, amounting to $345.22, on sugar and molasses imported in the Hercules, which they have paid. If the jury believe that the value of the sugar or molasses embraces all costs and charges at the place of exportation, including the costs of hogsheads, barrels, boxes, &c., necessary to enable the parties to export it, then it will be unnecessary further to consider the question; should they think otherwise, then a new question arises for their consideration, and that is, were the duties on this shipment paid voluntarily and without objection, in consequence of the parties mistaking the law; if they were so paid, they cannot be recovered back or deducted from the claim of the United States. It has been argued that a payment to a public officer, cannot be considered as a voluntary payment, as he holds the compulsory power in his own hands: this may be so where the party paying objects, at the time of payment, to the propriety and legality

of the charge. It is not necessary there should be a formal written protest, but there must be some objection, some notice that the claim is disputed, as the ground of objection or dispute may be removed or agreed to; but if paid without such objection, merely on a mistaken construction of the law, it is binding and cannot be recovered back, or set-off against another demand. Was there then any such notice or objection by the defendants at the time of payment? The only evidence on their part is that of Mr. Newman, who says there was no formal protest, but Mr. Clement informed him there was a mistake in calculating the duties, and that he (Mr. Clement) had been talking to Mr. Kern about it. Mr. Kern, who was a deputy collector, is since deceased, his testimony was not taken in his lifetime, and no witness is produced who heard the conversation. On the other side, Mr. Howell, deputy collector, Mr. Martin, the cashier, Mr. Bell, the ascertaining clerk, and Mr. McAdam, the bond clerk, have all been examined, and each of them say they never heard of any complaint by the defendant, and Mr. Howell states that if such complaint had been made, it would have been within his peculiar duty to examine it, but he knows of none.

Still, this is a question of fact for the jury, and it is their province to decide it, the burden of proof being on the defendants. If you are satisfied that a duty was charged on the boxes or hogsheads, over and above the value of the sugar or molasses at the time and place of exportation, and that such excess was paid by the defendants, they at the same time protesting or complaining against the justness or legality of the demand, then they are entitled to deduct the amount of such excess from the sum claimed in this suit. If, however, you believe that no such excess was charged, or if charged, that it was paid voluntarily and without complaint, it is binding on the defendants, and they will not be entitled to the deduction.

On the 28th March, 1843, the jury returned a verdict for the United States against Clement for $851, Newman having been discharged under the bankrupt law.